Argued November 24, 1953, affirmed June 17, petition for rehearing
denied September 15, 1954

# LAWRENCE WAREHOUSE COMPANY *v.* THE
# BEST LUMBER CO., INC.

271 P. 2d 661
273 P. 2d 993

*Hugh B. Collins,* of Medford, argued the cause for appellant. With him on the brief was Paul W. Haviland, of Medford.

*Wilber Henderson,* of Portland, argued the cause for respondent. With him on the brief were Henderson & Dickinson, of Portland.

Before LATOURETTE, Chief Justice, and ROSSMAN, LUSK, BRAND, TOOZE and PERRY, Justices.

BRAND, J.

This is an action by the Lawrence Warehouse Company against The Best Lumber Co., Inc., arising out of agreements for the "field warehousing" of defendant's logs by the plaintiff. The transactions included a lease by the defendant to the plaintiff of certain premises on which the logs were to be stored, and the issuance of nonnegotiable warehouse receipts by the warehouse company upon the delivery of logs to the warehouse. The purpose of the arrangement was to enable the defendant to "warehouse" its logs with the plaintiff who, on authorization of the defendant, would issue nonnegotiable warehouse receipts in the name

of the First National Bank of Portland, thus affording to the defendant convenient collateral security for loans from the bank. Warehouse receipts were so issued totalling 3,913,720 feet, but the plaintiff alleges that on demand of the bank for delivery to it of the balance of the logs represented by the receipts, it was ascertained, as the logs were checked out, that there had been only 3,624,390 feet of logs delivered into said warehouse, resulting in an alleged shortage of 289,330 feet. Plaintiff alleges that the logs were of the value of $20 per thousand and that the plaintiff, being unable to deliver said logs, was obliged to pay the bank $5,786.60. The prayer is for judgment in that amount. A demurrer to the complaint was overruled. The court struck all affirmative matter from the answer and amended answer and the case was tried solely on admissions and denials of the second amended answer. Verdict and judgment were for the plaintiff in the amount prayed for and the defendant appeals, assigning 44 alleged errors. The defendant issued to the plaintiff certificates for logs totaling 3,913,720 feet, the certificate being in the following form:

"I (we), the undersigned, hereby certify and guarantee that I (we) are the legal owners of the commodities set forth on the face hereof and that the quantity and quality stated thereon are correct and that I (we) have delivered the same as of the date hereof to the Lawrence Warehouse Company for warehousing purposes in accordance with the terms of our storage agreement with them. I (we) hereby authorize the Lawrence Warehouse Company to issue a Non-Negotiable Warehouse Receipt bearing the same number and date hereof covering the above mentioned commodities in the name of the First National Bank at Medford, Oregon

"Depositor Best Lumber Co., Inc.
"By G. Dolan".

The plaintiff then issued to the bank warehouse receipts based upon the certificates for the same amount of logs.

The overruling of a demurrer to the complaint is assigned as defendant's "principal grounds for reversal". The complaint alleges: (1) An agreement by the plaintiff to warehouse logs for the defendant and to issue warehouse receipts therefor; (2) a lease by the defendant to the plaintiff of real property as a log-decking area; (3) the execution and delivery to the plaintiff by the defendant of its certificates (as set forth supra) for the purpose of inducing the plaintiff to issue warehouse receipts and as a basis therefor; (4) based on the certificates, plaintiffs issued its warehouse receipts to the bank on authorization of the defendant (the date, receipt number and footage represented by each receipt is set forth in the complaint); (5) that defendant borrowed more than $5,786.60 from the bank and gave the warehouse receipts as security therefor; (6) that thereafter and on or about the 1st day of April, 1950, The First National Bank demanded under said warehouse receipts the delivery to it of the balance of the logs represented thereby; that as the logs were checked out, it was ascertained that there had been only 3,624,390 feet of logs delivered into said warehouse and there was a shortage of 289,330 feet; (7) that the logs at that time were of the reasonable value of $20 per thousand and plaintiff, being unable to deliver said logs, was obliged to pay The First National Bank of Portland (Oregon), on or about April 12, 1950, the value thereof, viz., $5,786.60; (8) the plaintiff demanded and was refused reimbursement. While it is unnecessary for the determination of the issue raised by the demurrer to the complaint, we

will also set forth paragraph 6 of that instrument, which reads as follows:

> "That as an incident to the consideration passing from the defendant to the plaintiff for rendering said warehousing service at the rates fixed therefor, the defendant, as one of the covenants in and to the lease heretofore described, did covenant and agree as follows:
>
> " 'and said lessor hereby covenants and agrees to indemnify lessee against any claim, expense, loss or damage suffered by lessee as a result of its occupancy of the premises and against any loss or damage to commodities which may be stored in said premises by the said lessee; and said lessor holds said lessee harmless from any damage or loss that may come to any commodities stored in said premises, irrespective of the nature of cause of said damage or loss.' "

It will be observed that the complaint, as a whole, is based upon the claim that there was a shortage of 289,330 feet in the logs originally delivered to the warehouse and that demand was made for reimbursement "for the shortage aforesaid", and that the prayer seeks recovery for the value of the alleged shortage in logs. It will also be observed that paragraph 6 of the complaint, supra, constitutes an indemnity agreement, not as to shortages in the amount of logs delivered, but as to loss or damage to logs which were delivered.

Counsel for plaintiff in his opening statement made it perfectly clear that the issue in the case was, whether or not there was a failure to deliver to the plaintiff warehouseman the amount of logs specified in the certificates issued by the defendant. From the opening statement we quote:

> "* * * ultimately there is only one real question that I believe you will finally have to decide. That is this, whether there was a shortage in the

logs that were placed in the warehouse; that is, whether there was an over-scaling and a certification by defendant that there were more logs in the warehouse than were actually there. That's the only real question you will have to decide. These other things that I have gone into at some length are legal questions the court will take care of. We have the issues made up by the complaint and the answer, and it all resolves itself into that one question, whether or not the certification made by Mr. Dolan as to the quantity of logs delivered into the warehouse, which was the footage recited in the warehouse receipts—whether that was erroneous, and whether he certified an amount beyond the amount actually delivered to the warehouse. That is the question.''

■■ The inclusion of paragraph 6 introduces an element of confusion in the complaint and raises some doubt as to the theory of the plaintiff. But we think the complaint was not vulnerable to attack by general demurrer. Under the statutory mandate ''In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties.'' ORS 16.120. *Stotts v. Johnson and Marshall,* 192 Or 403, 234 P2d 1059, 235 P2d 560. What was said by this court in *Lytle v. Payette-Oregon Irr. Dist.,* 175 Or 276, 293, 152 P2d 934, is particularly pertinent here. We quote:

''* * * Where it is doubtful upon what theory the pleading is drawn, it should be construed according to that theory which is most consistent with the facts alleged, and allegations not in harmony therewith may be considered as surplusage. * * *''

We construe the complaint as one based upon the claim that the defendant never delivered to the warehouse the full quantity of logs represented by the

certificates issued by it, by which it guaranteed that 3,913,720 feet had been delivered. Since plaintiff claims that it never received 289,330 feet and since it sought and was awarded the exact amount of the alleged value of that quantity of logs, it is in no position to contend that the complaint is based on an entirely inconsistent theory, namely, that it received the logs but that they were lost and that the defendant agreed to indemnify against loss or damage to logs stored. The insufficiency of the complaint as a cause of action based on the allegations of paragraph 6 supra is conclusively established by the fact that there is no allegation that plaintiff ever received any logs in excess of the amount delivered to the bank or that any of such logs were lost or damaged. As said in *Medford v. Pac. Nat'l. Fire Ins. Co.*, 189 Or 617, 627, 219 P2d 142, 222 P2d 407:

"Where a pleading states all of the material allegations requisite for a good cause of action or defense and is defective only by reason of the fact that it is vague or ambiguous or is wanting in that plainness and conciseness of statement required by the code, this court has held that the defect should be reached by motion to strike or to make more definite or certain rather than by demurrer. * * * *"

The certificates issued by the defendant guaranteed that a certain quantity of logs had been delivered to the warehouse. They constituted promises that the facts stated in them were true and if not true that defendant would compensate the promisee for the damage proximately caused by the untruthfulness thereof. The case is covered by the rule set forth in the Restatement of Contracts:

"Words which in terms promise the happening or failure to happen of something not within human

control, or the existence or non-existence of a present or past state of facts, are to be interpreted as a promise or undertaking to be answerable for such proximate damage as may be caused by the failure to happen or the happening of the specified event, or by the existence or non-existence of the asserted state of facts." Restatement of the Law, Contracts, § 2 (2).

A provision of our statute points toward the same conclusion:

"Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he shall not, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." ORS 41.350 (4).

The agreement set forth in paragraph 6 of the complaint did not, in our opinion, guarantee against any loss except loss or damage to commodities stored in said premises and damage suffered as a result of defendant's occupancy of the premises. We cannot accept the contention that the only loss mentioned, namely, the loss caused by the necessity to make good on account of the alleged log shortage, was a loss "as a result of its (the plaintiff's) occupancy of the premises". The guarantee in paragraph 6 of the complaint must be treated as surplusage so far as the question of demurrability of the complaint is concerned.

The defendant relies up the proposition that "Where it is apparent on the face of the complaint that proof thereof would violate the parol evidence rule, the complaint is subject to general demurrer. *Webster v. Harris,* 189 Or 671, 222 P2d 644". It then adds that a warehouse receipt is subject to the parol evidence rule. The case cited is not in point. It is sufficient for us to say that proof of the breach of

a written contract is not a violation of the parol evidence rule. The defendant contends in substance that the complaint fails to show that the plaintiff was legally liable to the bank and therefore that plaintiff was a mere volunteer in making payment to the bank on account of the log shortage covered by the warehouse receipt. It is argued that the plaintiff, if sued by the bank, could have set up a defense of nonreceipt of the logs on a theory that the assignee of a nonnegotiable chose in action is in no better position than the assignor with regard to defenses made by the obligor. The argument is unsound. The Uniform Warehouse Receipts Act provides in part:

"A warehouseman shall be liable to the holder of a receipt for damages caused by the nonexistence of the goods or by the failure of the goods to correspond with the description thereof in the receipt at the time of its issue. * * *" ORS 74.200.

A further provision of the same act, so far as pertinent here, reads as follows:

"A person to whom a receipt has been transferred, but not negotiated, acquires thereby, as against the transferor, the title of the goods, subject to the terms of any agreement with the transferor. If the receipt is nonnegotiable, such person also acquires the right to notify the warehouseman of the transfer to him of such receipt, and thereby to acquire the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt. * * *" ORS 74.420.

The complaint alleges and the evidence proved that the warehouse receipts were not issued to the defendant and then assigned to the bank. On the contrary, the nonnegotiable receipts were issued direct to the bank pursuant to the agreement between the plaintiff and the defendant. There was no occasion

for the plaintiff to allege or prove that the bank gave notice to the warehouseman of any assignment. The plaintiff, of course, knew that it had issued the receipt to the bank in the first instance. Under the statute, the bank was therefore the owner of the logs and the relationship of bailor and bailee did not exist between the plaintiff warehouseman and the defendant, as claimed in defendant's brief. The face of the complaint shows that the plaintiff was obligated to pay the bank. While the pleading is far from being a model, it sufficiently shows that the plaintiff did in fact pay the bank and would become entitled to reimbursement from the defendant on proving its case. There is nothing to show that the bank had any knowledge of any defense or counterclaim which could have been asserted against the defendant by the plaintiff. So far as the pleadings are concerned, the bank appears as a bona fide purchaser for value and the plaintiff was under obligation to reimburse the bank on account of its inability to deliver the logs represented by the warehouse receipts. We hold that the complaint was not vulnerable to demurrer and the first assignment is therefore without merit.

Assignments of error numbers 2 and 3 are as follows:

"Assignment of Error 2.

"The court erred in striking the third defense from the answer. (Ab 8, 9, 10)

"Assignment of Error 3.

"The court erred in striking the third defense from the amended answer. (Ab 11, 12, 13, 14)"

The third separate answer to the complaint consisted merely of an allegation that the defendant "was not authorized by law to become an insurer, surety, guar-

antor, or indemnitor against the neglect or default of any other person, firm or corporation, nor against any loss to any other person, firm or corporation  * * *.'' According to the complaint the defendant certified that it had delivered 3,913,720 feet of logs, whereas in truth there had been delivered only 3,624,390 feet. It sufficiently appears that the plaintiff issued warehouse receipts pursuant to the contract or guaranty of the defendant as to the amount of logs which had been delivered. The allegations of the defendant's third answer could not relieve it from liability if the allegations of the complaint were established by evidence.

In *Roane v. Union Pacific Life Insurance Co.*, 67 Or 264, 135 P 892, this court said:

"We think that both reason and the weight of authority are to the effect that where a corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the contract, it is estopped to set up the defense that it had no power to make it."

The third separate defense in the amended answer included the material previously stricken from the original answer and then added as a part of a single sentence the following:

"* * * and any said supposed inability of plaintiff to deliver any of said logs, which inability defendant denies, was because the plaintiff so negligently and carelessly conducted itself with respect to the same, and took so little care thereof that by and through the carelessness, negligence, and improper conduct of the plaintiff and its servants, said logs were lost and mislaid."

The court committed no error in striking the third affirmative defense from the amended answer. *Dun-*

*mire Co. v. Oregon Mutual Fire Ins. Co.*, 166 Or 690, 114 P2d 1005; *State ex rel v. Bishop*, 109 Or 448, 127 P2d 736, 129 P2d 276.

The second affirmative defense in the original answer and the same defense in the amended answer were stricken on motion by the plaintiff. The second defense as stated in the amended answer was as follows:

"For a second defense to the complaint defendant alleges that at the time each of the warehouse receipts mentioned in paragraph IV of the complaint were issued, the defendant delivered to plaintiff the quantity of logs mentioned on such receipt, and said supposed inability of plaintiff to deliver any of said logs, which inability defendant specifically denies, was because the plaintiff so negligently and carelessly conducted itself with respect to the same and took so little care thereof, that by and through the carelessness, negligence, and improper conduct of the plaintiff and its servants, the said logs became lost and mislaid."

We have serious doubt as to whether that answer should have been stricken. It alleges that all of the logs covered by the defendant's certificates were delivered to the plaintiff's warehouse, and alleges in substance either that the plaintiff was able to deliver them to the bank, or if not, that it was because they were lost through the plaintiff's own negligence. There was no inconsistency between this answer and the general denial of any shortage in the amount of logs delivered. The allegation that the plaintiff had received the logs and was able to deliver them is in substance merely a denial of the allegation of the complaint. The affirmative allegation is that the logs were lost through the plaintiff's negligence.

██ Under the provisions of ORS 16.400 the defendant could have challenged the correctness of the courts ruling upon the motion to strike and the ruling would then have been subject to a review upon the appeal, but an examination of the defendant's 44 assignments of error fails to disclose any assignment based upon the order striking the second defense. The propriety of that order is therefore not before us. In the present state of the record, the question of any alleged negligence on the part of the plaintiff in caring for logs delivered to it by the defendant will not be considered. The case was actually tried on the second amended answer which contained admissions and denials only. The complaint states no cause of action based upon the defendant's agreement to indemnify the plaintiff for loss of logs stored, as set forth in paragraph 6. The complaint not only fails to allege that any logs which had been stored were ever lost, but it affirmatively alleges that the 289,330 feet of logs which represents the difference between 3,913,720 feet covered by the defendant's certificates and 3,624,390 feet which were delivered to the bank were never delivered to nor stored with the plaintiff. The defendant requested the court to instruct the jury to disregard the allegations of paragraph 6 of the complaint and excepted to the failure of the court so to instruct, which is assigned by the defendant as error no. 35. The instruction should have been given. In assignment of error no. 34 the defendant objects to the failure of the court to instruct that the plaintiff had the burden of proof of the allegations of the complaint. The court did give such an instruction in general terms but in it the court read to the jury paragraph 6, together with other controverted portions of the complaint, and told the jury that the plaintiff had the

burden of proving the allegations of that paragraph. Thus an unnecessary burden was placed upon the plaintiff.

■ Assignment of error 36 complains of an instruction given by the court to the effect that a warehouseman is not liable for loss or injury to goods placed in his care unless the loss was caused by his failure to exercise the care which a reasonably careful owner would exercise. The instruction continued that if reasonable care was exercised and the loss occurred, and by reason of such loss the plaintiff was required to pay The First National Bank the sum of $5,786.60, the verdict should go for the plaintiff. This instruction also was erroneous since there was a denial in the complaint of any such loss and the entire shortage was explained by the allegation that the logs were never delivered. An adequate exception was taken.

■ The confusion which permeated the trial of this case seems to have come from the desire of the plaintiff not to put all of its eggs in one basket and from the numberless ill-founded and sometimes captious objections urged by the defendant. We have read the entire transcript of testimony. We find in it no substantial evidence that there was any loss or damage to logs which had been stored with the plaintiff. There is no evidence that any logs were stolen. The defendant's evidence rises no higher than to suggest the possibility, and a remote one, that some person could have clandestinely removed some logs from the warehouse property. The evidence for the plaintiff persuasively indicated that no logs were removed from the warehouse except by the defendant. The only evidence having any remote connection with the claim of negligence was to the effect that the plaintiff had not maintained a watchman and that the area had not

been fenced. There was nothing to show that either a watchman or a fence was required in the exercise of reasonable care. The merits of the case were tried out upon the issue made by the complaint as we have construed that instrument. There was substantial evidence that the defendant had overscaled the logs and had issued certificates for more logs than were delivered to the warehouse. Upon the conclusive showing of the amount of the shortage, the jury were justified in finding that such shortage had been caused by the failure of the defendant to deliver to the warehouse the amount of logs covered by its certificates. The defendant put in no evidence by any person who had scaled the logs and on which scale the certificates were issued, and in fact no evidence of significance was presented by the defendant. This is a proper occasion on which to invoke the authority of Oregon constitution, Article VII (Amended), § 3 which provides:

"* * * If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; * * *."

We are of the opinion that the judgment was such as should have been rendered and it is affirmed, notwithstanding errors committed.

On Petition for Rehearing

*Neff, Frohnmayer & Lowry,* of Medford, for the petition.

*Henderson & Dickinson,* of Portland, contra.

## BRAND, J.

The appellant has requested a rehearing before the full court. This is impossible. The case was heard by six of the seven justices of this court. Mr. Justice WARNER considered himself disqualified by reason of his former partnership with Mr. Wilber Henderson during the time that the firm was representing the Lawrence Warehouse Company. He is still of the opinion that he should not sit in the case. The decision of the case was unanimous on the part of the judges participating therein and we now adhere to that decision. In denying the motion for a rehearing we deem it proper, however, to clarify one sentence of our former opinion. The defendant takes vehement exception to the following statement which we made concerning the relationship between the bank, the plaintiff and the defendant:

"* * * Under the statute, the bank was therefore the owner of the logs and the relationship of bailor and bailee did not exist between the plaintiff warehouseman and the defendants, as claimed in defendant's brief. * * *"

The appellant also still insists upon the proposition that our decision has in some way violated the parol evidence rule.

■ We did not say that as between the bank and the Best Lumber Company the former should be deemed to be the owner. Of course, as defendant asserts, the dealings between the bank and the lumber company constituted a security transaction. In our opinion this fact was clearly recognized. Speaking of the warehousing arrangement, we said:

"* * * the plaintiff * * * on authorization of the defendant, would issue nonnegotiable ware-

house receipts in the name of the First National Bank of Portland, thus affording to the defendant convenient collateral security for loans from the bank. * * *"

As between the defendant and the bank, the logs were collateral security for loans, and the bank was not the owner. But as between the bank as holder of the warehouse receipts and the plaintiff warehouse company, the bank was in substantially the position of owner by virtue of the provisions of statute ORS 74.200 and ORS 74.420, cited in our opinion. The rights of the bank as holder of the nonnegotiable warehouse receipts were measured by the statutes. A nonnegotiable receipt is one in which it is stated that the goods received will be delivered to the depositor or to any other specified person. ORS 74.040. The bank was the "specified person." The parol evidence rule has no application. The bank innocently lent money to the defendant upon the security of the warehouse receipts. It did not seek to vary the terms of the receipts. It insisted upon its rights under those terms. One of those rights was to enforce the liability of the warehouse company for damages caused by the nonexistence of part of the goods covered by the receipts. ORS 74.200. The plaintiff recognized its liability and paid the bank the value of the logs which it could not deliver but which it was bound to deliver under its receipts.

We thought we had made it clear that, having paid the bank, the plaintiff bases its claim against the defendant upon the written certificate given to the plaintiff by the defendant and on which plaintiff relied in issuing the warehouse receipts to the bank. Again we say, the parole evidence rule has no application. Plaintiff asserts that it issued the receipts to the bank and was bound by them. Having been compelled to pay,

it seeks to recover from the defendant lumber company for loss suffered by reason of its issuance of the warehouse receipts in reliance upon defendant's certificate.

The legal theory now advanced by defendants seems to be that since the plaintiff warehouse company relied upon representations of defendant in its dealings with the bank, it is barred from asserting as against the defendant lumber company the fact that the representations of the defendant were, in a substantial particular, untrue, as found by the jury. There is no merit in such a theory. It was unnecessary for us to say that the bank was the "owner" of the logs and that statement may be disregarded. It had rights under the statutes cited which are incidents of ownership.

In our original opinion we expressed doubt as to whether the second defense as pleaded should have been stricken. That was the defense which alleged in affirmative form, first, that defendant delivered the full amount of logs to the warehouse as shown by its certificates, and second, that if there was any shortage it was due to the negigence of the plaintiff warehouse company. On further consideration both allegations appear to be speaking denials couched in affirmative form. The plaintiff had the burden of proving an initial shortage. In alleging that all logs were delivered as represented, the defendant merely denied the plaintiff's allegation of shortage. As to the alternative claim that plaintiff had lost the logs through negligence, a similar situation exists. Since plaintiff had the burden of proving that there was an initial shortage in the amount of logs certified, the defendant was entitled under a general denial to offer any evidence which would rebut plaintiff's claim. Any evidence, whether of negligent loss by plaintiff or even of larceny by any one or by accident or act of God,

would tend to explain the discrepancy between the incoming scale and the outgoing scale of the logs and to rebut the plaintiff's claim that the full quantity was never delivered.

The defendant's answer was not one in the nature of a cross complaint for damages on account of logs lost by plaintiff. It was an attempt to plead facts which would rebut plaintiff's claim. The court permitted inquiry into the care exercised by plaintiff concerning the logs and instructed the jury that if they found a shortage and that such shortage was not due to the failure of plaintiff to exercise reasonable care, etc., the verdict should be for plaintiff.

We have again read the testimony and again we find that there was substantial evidence to sustain the plaintiff's claim that the logs were overscaled by the defendant and that the certificates given by the defendant to the plaintiff showed substantially more logs delivered to the warehouse than were ever actually delivered.

The first matter which the jury was entitled to consider was the fact that when the logs were checked out, there was less footage than the defendant had certified as having been checked in. The jury then had the duty to consider any evidence which would explain the discrepancy and lead to a conclusion that the logs were placed in the warehouse to the full extent shown by the original certificates but that something had happened to some of them afterwards. The jury were entitled to consider the discrepancy between the original certificates and the final checkout along with the other evidence in arriving at its verdict.

There was testimony that no logs were taken out of the warehouse except by trucks operating for defendant. There was testimony concerning a ''check

scale" made by three employees of the plaintiff which indicated that the logs had been overscaled by the defendant. These men inspected the scale marks previously put upon the logs and compared their own scale with that shown by the marking on the logs. Contrary to the defendant's contention, we hold that the jury could find from the evidence that the marks on the logs were put on as a result of the original scale by the defendants. These circumstances coupled with what we consider to be the established discrepancy between the amount certified and the amount checked out, authorized the jury to find as it did. The only logical conclusion at which we can arrive from a reexamination of the evidence is that no more than 3,624,390 feet of logs were ever delivered to the warehouse by the defendant. We adhere to the opinion that the judgment was such as should have been rendered. To our mind the only possible explanation for the discrepancy, other than an original shortage in logs delivered, would be on the theory that the defendant itself removed more logs from the warehouse than the amount shown in the records of logs checked out. This is highly improbable and was not and could not well be claimed by the defendant to explain a known discrepancy.

The petition for rehearing is denied.