Argued October 28, affirmed December 23, 1970, petition
for rehearing denied January 19, 1971

# INSURANCE COMPANY OF NORTH AMERICA,
### *Respondent, v.* BREHM ET AL, *Appellants.*

478 P2d 387

*James K. Gardner*, Hillsboro, argued the cause and filed briefs for appellants.

*James F. Spiekerman*, Portland, argued the cause for respondent. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN and HOWELL, Justices.

McALLISTER, J.

■ Insurance Company of North America brought this action to recover money alleged to be due under an indemnity agreement executed by defendants. Defendants denied liability and affirmatively alleged that they had rescinded the agreement because they had executed it in reliance on false representations. The trial court, sitting in equity, heard evidence on the rescission issue① and entered its decree striking the affirmative defense, with leave to defendants to file an amended answer at law. Defendants appeal from that decree.

The indemnity agreement in question was executed when defendants applied to the Bank of Amer-

---

① This procedure is prescribed by ORS 16.460 (2) reading, in part, as follows:

"* * * When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed, until the determination of the issues thus raised, as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. * * *"

Although the statute does not direct that a decree be entered at the conclusion of the equitable proceedings, it assumes that there will be a decree. This decree is final and appealable before the determination of any remaining legal issues. Belcher v. Pentecostal Church et al, 216 Or 200, 202, 338 P2d 100 (1959); Simmons v. Washington Fid. Nat. Ins. Co., 136 Or 400, 401, 299 P 294 (1931).

ica, as transfer agent for Kaiser Steel Corporation, to issue a duplicate certificate for 100 shares of Kaiser's common stock to replace a certificate presumably lost. The events leading up to the issuance of that replacement certificate are important to defendants' contentions.

Defendants Frederick W. Brehm and Mary L. Brown, formerly Mary L. Brehm, are brother and sister. Some time prior to November, 1961, their father died. Under his will Frederick W. Brehm was named trustee and, in that capacity, took title to various shares of stock left by his father. Among those stocks were 10 shares of common and 20 shares of preferred stock in Kaiser Steel Corporation.

In May, 1962, Frederick notified Bank of America, as transfer agent for Kaiser Steel, that he had changed his address from San Francisco, California, to Timber, Oregon. The bank also had a Kaiser Steel account for Frederick W. Brehm and Mary F. Brehm of Seattle, Washington, who owned 100 shares of Kaiser common stock. The bank, by mistake, entered the change of address on the account of the Seattle Brehms.

In November of 1962 defendant Frederick W. Brehm sold the shares of Kaiser stock distributed to him as trustee under his father's will.

In 1966 Kaiser Steel paid a dividend for the first time since the bank had erroneously changed the address of the Seattle Brehms to Timber, Oregon. A check for $25, payable to Frederick W. Brehm and Mary F. Brehm, representing the dividend on the 100 shares owned by the Seattle Brehms, was received by Frederick Brehm in Timber, Oregon. He wrote to the bank saying that he knew nothing of owning these 100

shares, that all shares of Kaiser stock from his father's estate had been sold, and that his sister's name before marriage was Mary L. Brehm. He asked for the date the stock was issued and the certificate number, and concluded:

"\* \* \* My father could have made us a gift of such stock and the certificate has been lost, as were several other stocks in his estate."

The bank responded with the following letter:

"We have received your recent letter concerning Kaiser Steel Common Stock in your name.

"According to our records, certificate #11027 representing 100 shares was issued June 26, 1961 to Frederick W. Brehm & Mary F. Brehm Joint Tenants.

"If we may be of further assistance, please do not hesitate to let us know."

Frederick wrote again to the bank giving more details of the disposition of the Kaiser Steel stock from his father's estate. In this letter he also said:

"I discussed this matter with my sister Mary L. Brehm and we do not feel we are entitled to the stock or this dividend check of $25.00 recently received.

"If you still feel that our title of ownership is legitimate please advise me as to what steps to take to have a duplicate or substitute certificate issued to us."

The bank then sent him a form letter stating that under a blanket bond agreement it could issue a replacement certificate for the shares reported lost and enclosed forms to be filled out and sent to the insurance carrier (the plaintiff in this case) with a check for the bond premium. Defendants completed and sent to plaintiff a form entitled "LETTER OF INDEMNITY—EX-

HIBIT B". That form, signed by defendants, contained a printed paragraph stating that defendants agreed

> "* * * To indemnify and save harmless
> , and its Transfer Agents and
> Registrars and each of them, their respective legal
> representatives, successors and assigns and Insurance Company of North America, Surety, their
> successors or assigns (hereinafter collectively
> called 'Obligees') * * *"

from loss or liability by reason of issuance of the replacement certificate, whether or not such loss or liability was caused by the neglect of the Obligees.

Plaintiff agreed with the bank to assume liability on its bond for this transaction and the bank thereupon issued the replacement certificate. Within a few weeks, on September 12, 1966, defendants sold the stock for $2,500.

In October or November of 1967 the original certificate was presented for transfer endorsed by Frederick W. Brehm of Seattle, Mary F. Brehm being deceased. This presentation, of course, led to an investigation concerning the issuance of the replacement certificate. Learning that it had issued the duplicate in error the bank reimbursed the holder of the original certificate for the value of the stock, which, by that time, was $6,500, plus interim dividends.

In February, 1968, plaintiff notified defendants of what had happened and demanded that they make good the bank's loss in accordance with their indemnity agreement. Frederick, through his attorney, replied to this demand denying liability because of "misrepresentations" by the bank; he sent plaintiff a check for

$2,550, representing the proceeds of defendants' sale of the stock plus dividends received while they held it. Plaintiff then brought this action, claiming that it is entitled to the amount the bank paid the holder of the original certificate, which amount plaintiff had paid the bank under its bond.

Defendants' theory is that the bank's letters to Frederick constituted misrepresentations that defendants owned the Kaiser stock, that defendants were induced by these misrepresentations to apply for the replacement certificate and to sign the indemnity agreement, and that defendants, therefore, could rescind.

■ Our cases support defendants' position that rescission is available upon a showing of material, though innocent, misrepresentation. *Karn et ux v. Pidcock et ux*, 225 Or 406, 411, 357 P2d 509 (1961); *Brown et ux v. Hassenstab et ux*, 212 Or 246, 253, 319 P2d 929 (1957); *Schuler et ux v. Humphrey et ux*, 198 Or 458, 493, 257 P2d 865 (1953); *Dahl et al v. Crain et ux*, 193 Or 207, 228-229, 237 P2d 939 (1951); *Weiss and Hamilton v. Gumbert*, 191 Or 119, 135-136, 227 P2d 812, 228 P2d 800 (1951); *Sharkey v. Burlingame Co.*, 131 Or 185, 197, 282 P 546 (1929). This right of rescission is available as against the party making the false representations, "and all who stand in no better position." Restatement, Contracts, § 476. However, in this case defendants are claiming the right to rescind their promise to indemnify a party who took no part in the alleged misrepresentations. They assert in their brief that plaintiff is in the same position as the bank, but offer no support for this assertion. We are unable to agree.

■ Plaintiff in its complaint did allege that it is

the assignee of the bank's cause of action against defendants. Reading the complaint as a whole, however, we think it clearly discloses that plaintiff is relying on its own rights under the indemnity agreement. The terms of the agreement are alleged, as is a demand upon defendants to "hold [plaintiff] harmless from any loss in accordance with the terms of the indemnity agreement." The allegation of the assignment of the bank's cause of action is mere surplusage. *Lawrence Whse., Inc. v. Best Lbr. Co., Inc.*, 202 Or 77, 84, 271 P2d 661, 273 P2d 993 (1954).

■ We must determine, then, whether plaintiff's rights under the agreement can be affected by the bank's misrepresentations. The bank was not acting for plaintiff when it informed defendants of its records of the stock's ownership, and we are aware of no theory upon which the statements relied upon by defendants are attributable to plaintiff. Defendants do not claim that they are. They argue simply that because both plaintiff and the bank are parties to the indemnity agreement, plaintiff cannot enforce it if the bank could not. Defendants promised, in the "Letter of Indemnity", to hold harmless both the transfer agent and plaintiff. It does not necessarily follow, however, that because defendants may repudiate their promise to the bank that they can also repudiate their promise to plaintiff. They promised to hold each of several parties, including plaintiff and the bank, harmless from loss. Plaintiff and the bank each had a separate and distinct interest in the issuance of the duplicate certificate, and each has a right, independent of the other, to enforce defendants' promise of indemnity. In *Pitts et ux v. Crane,* 114 Or 593, 598, 236 P 475 (1925), this court approved the following principle:

"When a contract has been made with several

persons under which a separate duty arises to each, in contemplation of law, it is the same as if a separate and distinct contract had been entered into with each separately, and they must sue separately."

Although in *Pitts* the contract was held to give rise to joint rights, we think the principle of the quoted statement applies in this case.

■ Plaintiff cannot be treated as the bank's alter ego in this transaction. Defendants were not obliged to deal with plaintiff in order to obtain issuance of a duplicate certificate. They were informed by the bank's form letter that they were free to secure a bond through a company of their own choosing. The bank had a right to require defendants to furnish an indemnity bond. ORS 78.4050 (2) (b). Had defendants secured a bond from some other company they could hardly claim that their contractual obligations to that company were affected by the bank's misrepresentations. There is no essential difference in the present situation; as to defendants' promise to plaintiff, the bank is merely a third party.

■ Fraud or material misrepresentation by a third party gives a right to rescission only under limited circumstances. Restatement, Contracts, § 477 states the rule:

"Fraud or material misrepresentation by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto

"(a) has reason to know of the fraud or misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction, or

"(b) is affected by the fraud or misrepresentation under the law of Agency or of Trusts."

Before learning about the alleged misrepresentations, plaintiff in good faith had accepted liability to the bank relative to the transaction in question under its bond. This is, we think, a material change of position induced by defendants' promise. As to plaintiff the transaction was no longer voidable.

 Defendants also argue that the bank as transfer agent had a duty, for the benefit of the public, to make a reasonable inquiry or investigation about the ownership of the stock when it received defendants' first letter, that a more complete examination of the bank's records would have disclosed the mistake, and that it is contrary to public policy to allow the enforcement of a contract which indemnifies the bank for its own negligence in the performance of this public duty. Defendants rely on *Voyt v. Bekins Moving & Storage Co.*, 169 Or 30, 119 P2d 586, 127 P2d 360 (1942), and *So. Pac. Co. v. Morrison-Knudsen Co.*, 216 Or 398, 338 P2d 665 (1959). The former case states the rule that common carriers and warehousemen may not validly contract to relieve themselves of the liability for their own negligence in the performance of their public duties. 169 Or at 46. The *Southern Pacific* case recognizes that rule by implication, but also makes it clear that agreements to indemnify a party against the consequences of his own negligence are not, as a general rule, unenforceable. 216 Or at 418-419. We need not consider whether the public duties of a corporation's transfer agent are of a nature which should bring such agents within the rule applicable to carriers and warehousemen. Even if this were so, no such agreement is involved in this case. Indemnification of the bank is

an accomplished fact; it has been reimbursed by plaintiff. Defendants have not contended that plaintiff ought not to have paid the bank under its bond. This is an action on a distinct contract between plaintiff and defendants.

Other questions were raised in the briefs which we have not found it necessary to consider. For the reasons stated above, the decree of the trial court is affirmed.