Argued July 7, affirmed November 30, 1972

WOODTEK, INC., *Appellant, v.* MUSULIN ET AL,
*Respondents.*

503 P2d 677

*John R. Bakkensen,* Portland, argued the cause for appellant.

*William A. Palmer,* Portland, argued the cause for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER,[*] HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

Plaintiff, an Oregon corporation, brought this suit seeking rescission of a contract to purchase a lumber mill business from defendants Matt and Mike Musulin, who are father and son. Plaintiff alleged that defendants had materially misrepresented the

---

[*] McAllister, J., did not participate in the decision of this case.

financial condition of the business. From a decree dismissing the suit, plaintiff appeals.[①]

In April, 1969, defendant Matt Musulin began construction of a stud mill in Prineville, Oregon, under the name of Musulin Studs, Inc. The name was changed in July, 1969, to Musulin Forest Products, Inc., and is hereinafter referred to as Musulin, Inc. Defendants and Steve Musulin, brother of Matt, were officers of Musulin, Inc.

The mill began production in late October, 1969. Soon thereafter Matt Musulin, Charles E. Bernert, vice president and general manager of plaintiff, and Coral Alan Nyman, plaintiff's comptroller and certified public accountant, began negotiations for a sale of the defendants' mill to plaintiff. Bernert and Nyman requested a financial statement of Musulin, Inc., as of November 30, 1969. Mervin Hanscam, accountant for Musulin, Inc., prepared a "Statement of Financial Condition," each page of which carried the following: "Prepared from the Records Without Audit Verification."

After reviewing Hanscam's figures and data, plaintiff's Board of Directors approved the purchase. On January 9, 1970, Bernert, acting on behalf of plaintiff, and defendants signed a "Contract for Stock Purchase" whereby plaintiff acquired from defendants all of the outstanding shares of Musulin, Inc., for shares of Woodtek, Inc. The contract stated, in part:

"4. REPRESENTATIONS AND WARRANTIES.

"Each of the Sellers represents and warrants to

[①] Plaintiff was denied right to allege counterclaim for rescission of this contract in Musulin v. Woodtek, Inc., 260 Or 576, 491 P2d 1173 (1971).

the Purchaser, with total liability of the Seller limited to the amount of stock sold by him, that:
"* * * * *.

"e) The balance sheet of the Company as of the 30 day of November, 1969, and related statements of income and expenses for the period ended on that date, a copy of which has heretofore been delivered to the Purchaser, are a true and accurate statement as to the financial condition of the Company on the 30 day of November, 1969, and the results of its prior operation, prepared in conformity with generally accepted accounting principles consistently applied."

Plaintiff assumed control of the mill some five days after the contract was executed. On August 20, 1970, plaintiff notified defendants that it was rescinding the stock purchase agreement because of defendants' material misrepresentations of the financial condition of Musulin, Inc. Defendants denied any misrepresentation. Plaintiff then filed this suit for rescission, alleging that the above-quoted contract provision was false, in that the November 30, 1969, financial statement materially misstated the liability of Musulin, Inc., as of that date.

Plaintiff first contends that "[t]he trial court erred in concluding that plaintiff knew or should have known of the true extent of Musulin's liability to Trans Pacific Leasing, Inc., long before rescission was attempted and that, therefore, plaintiff was not entitled to the remedy of rescission."

The trial court found:

"* * * I believe the only material misrepresentation was that concerning the liability under the Trans-Pacific lease. I believe the misrepresentation was innocent. I believe in all the circum-

stances plaintiff's reliance upon the representation concerning the liability to Trans-Pacific was not really justified. Further, I believe that the plaintiff knew, or in the exercise of reasonable care should have known of the true extent of the liability to Trans-Pacific long before rescission was attempted and that plaintiff, therefore, is not entitled to a decree in equity for rescission by failure to promptly elect to pursue that remedy."

We have held that an innocent misrepresentation of a material fact which induces formation of a contract may be the basis of a suit for rescission. *Ins. Co. of North America v. Brehm,* 257 Or 385, 391, 478 P2d 387, 390 (1971), and cases cited therein. *See also,* Restatement, Restitution §§ 9 (2), 28 (b) (1937); 12 Williston on Contracts § 1500 (3d ed Jaeger 1970).

■ Plaintiff was justified in relying on the financial statement produced by the accountant for Musulin, Inc. Bernert and Nyman requested the statement so that plaintiff's Board of Directors could make their decision. Nyman testified that the financial statement was represented to him as being reasonably accurate:

"Q During the negotiations with the Musulins and Mr. Hanscam prior to the presentation of the November 30, 1969, statement, which would be Exhibit No. 4, did you have any discussions with Mr. Hanscam about his ability to produce an absolutely true and accurate statement by the time the parties wanted it?

"A Yes.

"Q What was this discussion?

"A I believe he said because of the state of the records, et cetera, et cetera, that his statement could be off, but that any differences shouldn't be material. There could be some minor discrepancies that would turn up, but if there were, they would be for basically capital items; they would not be

expense items. But that in the overall picture, it would be reasonably accurate; and that is primarily what we were looking for."

Mike Musulin testified:

"* * * Woodtek wanted to have a financial statement drawn up as of the end of November 30th. And I remember Mr. Hanscam being asked if he could possibly get something together that would be a statement for them to use for the December 17th stock—or Board of Directors' meeting, and he said that he would do the best job he could in that short amount of time, and he did it."

The Hanscam statement and a report prepared by Nyman, using Hanscam's figures, were considered by plaintiff's Board of Directors in reaching their decision.

The warning accompanying the statement that it was compiled "without audit verification" was sufficient to apprise its reader that the statement was not accurate in every particular but did not abrogate the oral representations by Hanscam that the figures were reasonably accurate. *Cf.* 12 Williston on Contracts § 1515B, at 489 (3d ed Jaeger 1970). Under these circumstances, Nyman and plaintiff's Board of Directors justifiably relied on the Hanscam statement for what it represented.

■ We believe, however, as did the trial court, that plaintiff knew or should have known of the true extent of liability of Musulin, Inc., to Trans Pacific Leasing, Inc., long before it attempted to rescind the stock purchase agreement. The record discloses that prior to January 9, 1970, the contract date, Bernert and Nyman thoroughly discussed the Trans Pacific lease with the Musulins, including the term of the lease, the

amount of the monthly payments, and the machinery covered by the lease. Approximately two weeks after the purchase agreement was executed, Bernert and Nyman held additional discussions with defendants concerning the equipment lease in an attempt to extend the term of the lease and decrease monthly payments. In February and March, 1970, Nyman made certain adjusting entries in the Musulin, Inc., books in order to change the accounting presentation of the Trans Pacific lease. He did not discuss these changes with the other members of plaintiff's staff.

> " 'The general rule is that the corporation is affected or charged with knowledge of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation through its other officers or agents, or its board of directors * * *.' " *Phillips v. Colfax Company, Inc.*, 195 Or 285, 300, 243 P2d 276, 282 (1952), quoting 19 CJS, Corporations § 1078, at 613.

The evidence indicates that Bernert and Nyman, while acting within the scope of their duties for plaintiff, learned the true extent of Musulin, Inc.'s liability under the Trans Pacific lease and chose either to ignore the facts or to keep them a secret.

Plaintiff also specifies as error the failure of the trial court to find that the November 30, 1969, financial statement contained other material misrepresentations. Plaintiff argues that these additional misrepresentations would render false the defendants' contractual promise that the financial statement was accurate. The alleged misrepresentations concern Musulin, Inc., liabilities on a promissory note, ac-

crued interest, accrued payroll taxes, unpaid attorney fees and finance charges.

The November 30, 1969, financial statement indicates that as of that date Musulin, Inc., was indebted to Steve Musulin on a promissory note for $200. At trial plaintiff placed in evidence a note payable to Steve Musulin by Musulin, Inc., for $21,899.85, dated June 15, 1969. However, the evidence disclosed that the note had been prepared and antedated in March, 1970, at the suggestion of Bernert and Nyman. The note was intended to be payment for the real property on which the Musulin, Inc., mill was located, which was owned by Steve Musulin and his sister. On cross-examination, Steve Musulin admitted that the amount of the note reflected not only the real property purchase price but also a certain amount for sums advanced by Steve Musulin to Musulin, Inc., during the summer of 1969. However, there was no proof of the extent to which the note represented the purchase price of the millsite as compared to the money paid by Steve Musulin for Musulin, Inc., debts. Mr. Nyman did testify that he had information at the time of acquisition that the sum of $21,899.85 was due Steve Musulin. He did not know the exact sum but it was approximately $20,000 and this sum was included in the financial statement of November 30, 1969. Steve Musulin testified that the $21,899.85 note was made at the request of "Chuck Bernert and Al Nyman."

Mr. Klohk, a certified public accountant who did field work beginning April 21, 1970, in connection with an audit for plaintiff, testified that the November 30, 1969, financial statement failed to disclose approximately $5,000 of interest which had accrued on notes payable of Musulin, Inc. However, Klohk's figure was

not the product of an actual computation of interest accrued as of November 30, 1969. Klohk reasoned that since Musulin, Inc., owed $8,000 in interest on its notes payable on March 31, 1970, the interest liability on November 30, 1969, would have been approximately $5,000. Klohk admitted that his computation included interest on the Steve Musulin note for $21,899.85 from June 15, 1969. The uncontradicted evidence was that this note did not exist until March, 1970.

Klohk testified that the November 30, 1969, financial statement also understated accrued payroll taxes by $11,551.38. Using the payroll tax reports of Musulin, Inc., for the final quarter of 1969, Klohk estimated that two-thirds of the sum reported, or $11,551.38, had accrued by November 30, 1969.

Plaintiff has the burden of proving that the November 30, 1969, financial statement failed to disclose specific Musulin, Inc., liabilities which were in existence on that date. The note payable to Steve Musulin was not executed until March, 1970. Not only was this done with the knowledge of plaintiff's officers, but it was done at their request. We are unable to determine from the evidence the extent to which the note reflected true Musulin, Inc., debts to Steve Musulin without resorting to conjecture. Likewise, although plaintiff proved that some amount of interest had accrued on notes payable by Musulin, Inc., on November 30, 1969, we are unable to determine the amount of unstated accrued interest. Klohk estimated the unstated payroll taxes of Musulin, Inc., without the benefit of actual payroll records. He knew that the Musulin, Inc., payroll was approximately the same for November and December, 1969, but Klohk was unaware of the payroll for October, 1969. He admitted

that this might undermine his estimate for accrued payroll taxes.

A finding of fact on a material issue must be based on some substantial evidence, and not mere speculation. *Conger v. Dant & Russell, Inc.,* 250 Or 480, 443 P2d 201 (1968); *Lemons v. Holland,* 205 Or 163, 284 P2d 1041, *rehearing denied* 205 Or 163, 286 P2d 656 (1955); 32A CJS, Evidence § 1042. We cannot determine the materiality or the amount of the alleged non-disclosures of liability without reasonably specific proof of the amounts involved. Plaintiff has failed to carry its burden of proof on these allegations.

Plaintiff's evidence indicated that the November 30, 1969, financial statement failed to disclose liabilities of Musulin, Inc., for an attorney's fee and finance charges in the amount of $3,825.89. The evidence indicates that these omissions were innocent.

An innocent misrepresentation may afford the basis of a suit for rescission if the misrepresentation is material. *Ins. Co. of North America, supra.*

> "A misrepresentation is material if it would be likely to affect the conduct of a reasonable man with reference to the transaction in question." Restatement, Restitution § 8 (2).

The misrepresentation must be of such a nature that without it the contract would not have been consummated. Black, Rescission and Cancellation § 70, at 180 (2d ed 1929).

> " '[I]f it be made probable that the same thing would have been done if the fraud had not been practiced, it cannot be deemed material.' " *Ibid.* (Citations omitted.)

Plaintiff relies on *Brown v. Hassenstab,* 212 Or

246, 319 P2d 929 (1957). In *Brown* there was clear evidence that the plaintiffs would not have entered into the contract had they not believed in the truth of defendants' representations. In this case, plaintiff's management did not rely on the November 30, 1969, financial statement as true and accurate in every particular, but only as reasonably accurate. Nyman was warned that the statement would contain some discrepancies. The sale of Musulin, Inc., was a rather substantial transaction involving several hundred thousand dollars in stock, real estate and other assets. We do not feel that a reasonable man would have refrained from entering into this transaction had he known of these comparatively small undisclosed liabilities. *Cf. Brown v. Hassenstab, supra*; 2 Restatement, Contracts § 470, Comment *a*.

Plaintiff's final assignment of error concerns the trial court's failure to award relief in addition to rescission. In view of our conclusion that plaintiff is not entitled to rescission, we need not discuss this assignment.

Affirmed.