MILLER et al,
*Respondents,*
*v.*
NOEL et al,
*Appellants.*

(No. 77-1957-L-1, CA 16743)

624 P2d 1105

Thomas C. Howser, Ashland, argued the cause for appellants. With him on the briefs was Cottle, Howser & Cue, Ashland.

Carlyle F. Stout, III, Medford, argued the cause for respondents. On the brief were William H. Ferguson, and Grant, Ferguson & Carter, Medford.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

Plaintiffs brought an action at law[1] to recover the full amount owing on a contract for the sale of plaintiffs' doughnut business to defendants. Defendants brought an equitable counterclaim, seeking rescission of the contract based on plaintiffs' alleged misrepresentation of the past profitability of the business. Defendants appeal the trial court's denial of their request for rescission.

Defendants moved to Ashland, Oregon, in 1975, and sought, through Wilkerson, a real estate agent, a small business to own and operate jointly. Mr. Noel was previously a painting contractor. He also had owned and managed rental apartments, which required that he keep account books.

Plaintiffs offered their business for sale, and defendants became aware of it through Wilkerson. Initially, plaintiffs provided defendants with a 1973 profit and loss statement for the business. According to the statement, there was a $5,119.35 profit for 1973. Mr. Noel testified that he had first declined to purchase the business because of the inadequate profit disclosed by this profit and loss statement. Mr. Miller testified that he was unaware of this.

Thereafter, defendants did enter into an earnest money agreement with plaintiffs. The agreed purchase price for the business was $17,000. The earnest money agreement included a request by defendants for an "actual profit and loss statement for 1974."

Plaintiffs were unable to provide a 1974 profit and loss statement prepared by an accountant, so instead Mr. Miller prepared a statement dated May 26, 1975, handwritten by him, entitled "Tentative Profit and Loss Statement for 1974." The statement shows "gross" of $27,605, "expences" [sic] of $14,336, and "net" of $13,269. Mr. Miller testified that he took these figures from his checkbook, and that he had neither sold a business nor prepared a profit and loss statement previously. Wilkerson testified that Mr.

---

[1] Defendants did not assign as error in their opening brief an issue concerning the award of damages in plaintiff's action at law. Plaintiffs filed no cross-appeal, but did discuss the issue in their brief. Because it was not assigned as error in either party's opening brief, pursuant to Rule 7.19, we will not consider it.

Miller said in regard to the profit and loss statement, "This is the best I can do now." Wilkerson also testified that he told defendants that as the statement was only tentative, " * * * you don't know what the profit and loss is going to be, whether it is going to be a profit or whether it is going to be a loss."

There is a dispute in the evidence as to whether Mr. Noel actually saw the Miller checkbook. Wilkerson testified, however, that he advised Mr. Noel to make sure that he saw it. Plaintiffs testified that Mr. Miller provided the checkbook stubs and an inventory list to defendants and that Mr. Noel reviewed the documents with Wilkerson's assistance. The checkbook records are not in evidence. Plaintiffs' attorney, Scannell, prepared the contract based on the earnest money agreement. The contract included a provision that the "actual" profit and loss statement be provided.[2]

Mr. Noel testified that he bought the business based on the tentative profit and loss statement. Mr. Miller testified that defendants were not concerned about the financial statement at the time the contract was entered into, but rather were concerned about whether the lease plaintiffs held for the premises could be transferred to them. Scannell testified that the contract was not contingent on the contents of the actual profit and loss statement. Defendants made payments in accordance with the contract for the months of August and September, 1975, and then made no more payments. They continued to operate the business for about a year after making their last payment.

Scannell testified that he did not recollect Mr. Noel ever appearing in response to his letters concerning the defendants' delinquent payments and the availability of an accountant's profit and loss statement. Mr. Noel stated that he went to Scannell's office in response to every letter he received and that the profit and loss statement was never available to him. The actual profit and loss statement,

---

[2] Paragraph 10 of the contract provides:

"10. *Profit & Loss Statement.* Sellers agree to provide Buyers with a copy of their actual profit and loss statement for the year 1974."

Schedule C of plaintiffs' federal tax return Form 1040, was provided to defendants' attorney in a letter dated July 12, 1976. The statement showed gross income of $22,658 and net income of $8,076.

There is ample evidence of the change made in the business by defendants. Mr. Noel testified that he had intended to sell Mexican food "[r]ight from the very beginning." Scannell testified that there was discussion about changing the business into a Mexican restaurant during the contract negotiations. Mr. Miller testified that: the decor of the premises was changed to a Mexican motif; defendants installed equipment for preparation of Mexican food; and defendants discontinued a profitable wholesale doughnut route.

The trial court found:

" * * * that the defendants were not justified in relying on the representations as to the profit and loss of the business made by the plaintiffs. The books of the business were made available to the defendants and they had an opportunity to examine them. Defendant James T. Noel had been a painting contractor prior to purchasing the business and was as familiar with profit and loss statements as the plaintiff.

"It is clear from the Exhibit that the profit and loss statement was only a tentative one since it showed no depreciation, no accounting or legal fees, no insurance expense, no advertising expense, no repair expense or any other expenses which would obviously be necessary as a part of this type of business.

In *Hampton v. Sabin,* 49 Or App 1041, 621 P2d 1202 (1980), this court stated at 1049:

"In order to establish a case of misrepresentation in avoidance of the contract, the plaintiffs must prove that the defendants made a false statement of material fact upon which the plaintiffs justifiably relied in making their decision to purchase * * * . Recission [sic] may be based on an innocent misrepresentation as well as upon a fraudulent one. *Gardner·v. Meiling,* 280 Or 665, 671, 674, 572 P2d 1012 (1977); *Bodenhamer v. Patterson,* 278 Or 367, 370, 563 P2d 1212 (1977); *Woodtek, Inc. v. Musulin,* 263 Or 644, 653, 503 P2d 677 (1972)."

In this case, it is clear that the tentative profit and loss statement was inaccurate. On *de novo* review, we find that

the misrepresentation as to the amount of profit was an innocent one.[3]

Although Mr. Noel testified that the tentative profit and loss statement was a determinative factor in the decision to purchase the business, there is ample evidence that defendants were not relying on it. It seems unlikely, too, that one intending to change the nature of a business would place great emphasis on the business' prior profitability.

Even assuming that defendants did rely on the information provided in the tentative profit and loss statement, we agree with the trial court's finding that the reliance was not justified. The profit and loss statement was clearly marked tentative. It was not prepared by an accountant. Furthermore, unlike *Hampton v. Sabin, supra,* 49 Or App at 1048, and *Woodtek, Inc. v. Musulin, supra,* 263 Or at 649, where reliance was found to be justified, plaintiffs here did not make oral representations that lent reliability to the statement.

Plaintiff was inexperienced in accounting procedures, acknowledged this to defendants' agent Wilkerson, and clearly indicated that the statement was tentative. The statement lacks information that one would expect to find on a profit and loss statement, as the trial court noted. Defendants were warned by Wilkerson of the unreliability of a tentative profit and loss statement. We conclude, therefore, that defendants could not have reasonably relied on the tentative profit and loss statement provided to them by plaintiffs.

Affirmed.

---

[3] *Compare Hampton v. Sabin, supra,* 49 Or App at 1050 where the court found that the misrepresentation of the restaurant's past profitability was deliberately made.