Argued March 13, affirmed May 16, 1974

ENGELKING ET UX, *Appellants, v.*
FIELD ET AL, *Respondents.*

522 P2d 493

*Francis F. Yunker,* Portland, argued the cause for appellants. With him on the brief was Darrell E. Bewley, Portland.

*Bruce D. Kayser,* Portland, argued the cause and filed a brief for defendants Field. Alan K. Brickley, Portland, argued the cause for defendant Boyce. With him on the brief were Davis, Jensen, DeFrancq & Holmes and Theodore B. Jensen, Portland.

O'CONNELL, C. J.

This is a suit for the rescission of an exchange of real property made between plaintiffs and defendants. Plaintiffs appeal from a decree in favor of defendants.

Plaintiffs, acting through defendant Boyce, a realtor, exchanged their farm property for an apartment building owned by defendants Field. The apartment building was dilapidated and therefore did not comply with certain building and sanitary regulations of the municipal housing code. Plaintiffs allege that defendants misrepresented the condition of the building. In addition, plaintiffs contend that the prospectus prepared by the Fields in connection with their offer of exchange stated that the building contained six units and generated a monthly income of $398.00, when in fact there were fewer than six apartment units and these units generated less than $398.00 per month.

■ The trial court found that the representations made by the defendants with respect to the quality of the apartment building, the number of legal units it contained, and the income it generated were false, material and constituted grounds for rescission. We concur in this finding.

However, the trial court held that plaintiffs' conduct subsequent to the sale constituted a waiver of their right to rescind. This is a more difficult question and calls for a more specific examination of the evidence.

The exchange of the apartment building for the farm land was consummated on January 1, 1971. About one week later plaintiffs visited the building at which time they saw the downstairs, but they declined the apartment manager's invitation to inspect the upstairs because Mrs. Engelking "said that it smelled."

On February 19, 1971, the Bureau of Health posted a notice declaring that an "unlawful condition" existed on the premises because of "sub-standard building maintenance deficiencies" and "unsanitary living conditions," and pronounced the premises "unsafe for human occupancy." The notice then stated:

"You are therefore required to cause said unlawful condition to be abated within THIRTY (30) days from the date hereon or cause said premises to be vacated, or remain vacant, until said unlawful condition has been corrected and the premises again inspected and found to be in a lawful condition."

This notice was also sent to defendant Boyce but not to plaintiffs. Boyce did not forward the notice to plaintiffs but instead wrote them a letter in which he minimized the problem, misstated the consequences of the condition of the building, urged the Engelkings to

bear with him and told them he would take care of the situation "so that there won't be any concern on your part."①

Boyce's testimony at trial was very vague concerning the steps he actually took in attempting to renovate or to resell the property and substantial doubt exists as to whether he in fact did anything in this respect. Nevertheless, less than a month later

---

①                                          "February 23, 1971

"Mr. and Mrs. Ted Engelking
22415 N.E. 29th
Ridgefield, Washington

Dear Mr. and Mrs. Engelking:

We had an unusual thing happen at the apartment the other day. One of the Welfare tenants had a regular visit from the Welfare people and he found that they had three more people in that apartment than was allowed. Only three people are supposed to be living in the apartment and there were six adults. The Welfare worker felt that the apartments were overcrowded and, in turn, contacted the County Health Department. The Health Department came out and made an inspection and felt like the tenants should be removed, the building put in shape and re-rented.

In view of all of this, I felt that you probably didn't wish to continue owning the property so we have gone to work and talked with the builders regarding purchase of the building, and also their upgrading the building. They feel they could perhaps make four or five real deluxe apartments there and command a much higher rental.

If you will bear with me, as I know you have in the past, I'll try to work this thing out so that there won't be any concern on your part. I appreciate your patience in this. Under the circumstances, I felt it was better to write you directly rather than talking over the phone about this situation.

The effective vacancy date for the tenants is approximately March 19th and they will be paid up until that time. I also thought perhaps you didn't want to think about storing your things over there, in view of what has happened.

We will keep on top of this and rest assured I will keep you posted, as I have your concern at heart.

"Very sincerely yours,

/sgd/   Hays Boyce
fhb:s                                    F. HAYS BOYCE"

plaintiffs received a letter from the Chief Building Inspector which detailed the substandard conditions present in the building and informed plaintiffs that the building was a five-family dwelling.② From this time, therefore, plaintiffs had actual knowledge that the representations made by the Fields had been false. However, they made no attempt to rescind at this time. Rather, they acquiesced in Boyce's suggestions and retained him as their agent.

---

② "March 15, 1971
"Theodore and Hazel Marie Engelking
22415 N.E. 29th Street
Ridgefield, Washington 98642

"Re: 4826-28 North Harvard

Dear Mr. and Mrs. Engelking:

An inspection of the five-family dwelling at the above address revealed the following substandard conditions as outlined in Housing Regulations:

1. The foundation is crumbling and inadequate. The supporting beams are severely rotted, and the ends of the wood columns are in the dirt.

2. The floors are spongey, and the walls are uneven.

3. The chimneys are separating from the walls.

4. There are leaks in the walls.

5. There is an illegal apartment in addition to the one permissible living unit in the first story.

6. There is a lack of adequate sanitary facilities. Each apartment is required to have its own water closet, lavatory, and bathtub or shower.

7. Heat, especially in Apt. #7 upstairs, is inadequate.

Unless this building is brought up to Housing Regulations under proper permits without delay, the structure will be posted to be vacated.

"Yours truly,

C. N. CHRISTIANSEN
BUILDING INSPECTIONS DIRECTOR

C. C. Crank
Chief Building Inspector"

NFS:hl

Boyce then sought another purchaser for the property and on April 30, 1971, plaintiffs sold it to Calvin E. Ludeman. If the sequence of events relating to the property had ended here, it would be clear that plaintiffs would not have been able to rescind because they would not have been in a position to return the property to the vendors and thereby put them in status quo ante. But plaintiffs' interest in the property did not end at this point. On October 4, 1971, Ludeman informed plaintiffs that because his plans for improving the property had gone awry, he could not continue performance under the contract and on October 27, 1971 plaintiffs accepted a reconveyance of the property and cancelled the contract. On February 10, 1972, plaintiffs brought the present suit.

■ ■ The foregoing evidence demonstrates quite clearly that plaintiffs knew as early as January of 1971 the general condition of the property they had purchased. In March they knew specifically what was wrong with the building, that it contained five, not six, units, and that it would have to be vacated if they did not bring it up to standards required by the building code. Knowing this, they nevertheless waited until February 10, 1972, to bring the rescission suit. This does not meet the well established requirement that a suit for rescission must be brought promptly after the plaintiff has knowledge of the facts constituting the grounds for rescission.[9]

Plaintiffs' position is made even more vulnerable by the fact that they sold the property to Ludeman.

---

[9] First Western Mortgage v. Hotel Gearhart, 260 Or 196, 488 P2d 450 (1971); Miller v. Barker, 233 Or 113, 377 P2d 343 (1962); Union Savings & Loan Ass'n v. Getty, 135 Or 565, 296 P 878 (1931); Scott v. Walton, 32 Or 460, 52 P 180 (1898).

This strongly indicates plaintiffs' intention to waive their right to rescind.[9] The happenstance that Ludeman wished to cancel the contract and that plaintiffs were willing to accept a reconveyance does not, we think, militate against the application of this principle.

We hold, therefore, that plaintiffs are without remedy by way of rescission as against the defendants Field.

Plaintiffs argue that even if this is true, they are nevertheless entitled to relief against Boyce in this lawsuit. Plaintiffs do not claim that rescission is appropriate against Boyce, nor can they argue that he is liable to them for the full amount of the benefit received by the Fields. But plaintiffs contend that because Boyce's conduct toward them was fraudulent and in violation of his loyalty and fiduciary duties, a court of equity can order appropriate relief. The problem with this argument is that it asks the court to convert a suit for rescission into an action for fraud, and this we cannot do under the pleadings and record of this case.

The decree of the trial court is affirmed.

---

[9] Disposal Technology, Inc. v. Ehrlich, 260 Or 551, 491 P2d 1009 (1971); Miller v. Barker, *supra* note 3; Schuler v. Humphrey, 198 Or 458, 257 P2d 865 (1953).